[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 3, 2005
THOMAS K. KAHN
CLERK

Nos. 05-10844 & 05-10846
Non-Argument Calendar

_____

D. C. Docket No. 01-00258-CV-FTM-29SPC

NANCY A. KUZMA,
TIMOTHY A. KUZMA,

Plaintiffs-Counter-
Defendants-Appellants,

versus

CITY OF FORT MYERS,
a Florida municipal corporation,

Defendant-Counter-
Claimant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(October 3, 2005)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This case arises out of the seizure and demolition of the Edisonian Court Motel ("Motel") by the City of Ft. Myers ("City"). Nancy and Timothy Kuzma, the owners and operators of the Motel, filed a multi-suit claim against the City, alleging procedural due process and unreasonable seizure violations under 42 U.S.C. § 1983, and a state-law inverse condemnation claim based on the Motel's demolition. This is the second time this case has been before this Court. When we last considered this case, we remanded the case back to the district court.

There were three factual issues to be resolved on remand: 1) whether the Kuzmas had equity in the Motel at the time the City closed it; 2) whether the City's closure of the Motel caused the Kuzmas to lose their equity, if any; and 3) the amount of just compensation for the demolished Motel buildings, if the trial court were to find that the City's demolition amounted to a taking.

At the close of the evidence, the district court instructed the jury that the Kuzmas had brought two claims: first, that they suffered economic damages in the form of lost equity because the City unreasonably closed the Motel; and second, that they were entitled to just compensation from the City for the demolition of the improvements. The jury was instructed to calculate the equity the Kuzmas had in the Motel property at the time of the closure, by determining the fair market value of the land and the improvements, less the encumbrances, and to determine

2

whether the Kuzmas lost their equity, if any, as a result of the City's unreasonable closure of the Motel. The jury was instructed further to determine the amount of just compensation, as measured by the value of the improvements on the day they were demolished, to which the Kuzmas would be entitled if the court found that a taking had occurred.

The jury found that, as of December 6, 2000, the Kuzmas had $27,000 of equity. The jury, however, found that City's closure of the Motel did not cause the Kuzmas to lose any equity through mortgage foreclosure. In addition, the jury found that $0 would constitute "full compensation" for the value of the Motel structures at the time of the Motel's demolition.

The Kuzmas present the following issues on appeal: 1) whether the jury's verdict was based upon the evidence; 2) whether the Kuzmas were entitled to a twelve member jury under Florida law; 3) whether Florida law required the Kuzmas to exhaust administrative remedies before filing inverse condemnation proceedings against the City; 4) whether the jury instructions were defective; and 5) whether the district court should have admitted certain exhibits into evidence over the Kuzmas's objections regarding the exhibits' relevancy, materiality, and potential prejudicial effect. For the following reasons, we affirm the district court.

We find that the jury's verdict was based upon the evidence. The standard

3

for reviewing a denial of a motion for judgment notwithstanding the verdict is the same as that applied by the trial court. *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1116 (5th Cir. 1980). The denial must be upheld unless all of the evidence, viewed in the light most favorable to the nonmoving party, cannot support the jury's verdict. *Id*.

Expert testimony provided by both sides indicated that the improvements could potentially have a zero value or a negative value because the Motel was ten years past its forty year useful life and because a buyer would likely want to remove the improvements to put the land to a different use. Mrs. Kuzma's statement that, in the two years the property was actively for sale, it only attracted two written offers, both of which contemplated demolishing the buildings, also indicated potential zero value. Thus, while the evidence could have potentially supported a finding that the improvements had value, it also could have supported the jury's actual finding that the improvements had zero value.[1]

We also find that the Kuzmas' waived their right to a twelve person jury.

---

[1]One of the Kuzmas's arguments relies on the fact that the jury established a value of $72,000 for the Motel structures on the verdict form while it simultaneously returned a $0 verdict for the compensation for the improvements. These two findings could have possibly been inconsistent, although they could have also possibly been consistent because the evidence supported the jury finding that the value may have deteriorated to $0 from closing to demolition. Nevertheless, the Kuzamas have stated in their reply brief that they are not raising inconsistency as grounds for appeal. Furthermore, even if they were, this claim would be barred by their failure to raise it before the jury was discharged. *See Coralluzzo v. Educ. Mgmt. Corp.*, 86 F.3d 185, 186 (11th Cir. 1996) (per curiam).

Because this issue involves a ruling as a matter of law, we will review it *de novo*. *See Mich. Millers Mut. Ins. Corp v. Benfield*, 140 F.3d 915 (11th Cir. 1998). In Florida, there is a statutory right to have a twelve person jury determine just compensation in condemnation cases. Fla. Stat. § 73.071(1) (2004). That right, however, may be validly waived by written or oral stipulation in open court. *Div. of Admin. State of Fla. Dep't of Transp. v. Davis*, 511 So. 2d 686, 688 (Fla. 4th DCA 1987). At the pretrial conference prior to the first trial, which included the inverse condemnation claim, the Kuzmas expressly stipulated to a jury of seven. The Kuzmas's only demanded a jury of twelve on the first day of trial, after the court had called a venire only large enough to produce a seven-person jury. The district court properly rejected the demand because the Kuzmas had waived this right.

We also find that we do not need to rule on the validity of the Kuzmas' inverse condemnation claim because we agree with the district court that this claim is moot because the jury found the motel improvements did not have any value as of the date of demolition.

Finally, we find that the district court's jury instructions and evidentiary rulings were in fact proper, and that any potential error in the jury instructions is moot. We review these rulings and instructions under an abuse of discretion

standard. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1339-40 (11th Cir. 2003); *Eskra v. Prvident Life and Accident Ins. Co.*, 125 F.3d 1406, 1415 (11th Cir. 1997). If the jury instructions do not accurately reflect the law, we review them under a *de novo* standard. *Eskra*, 125 F.3d at 1415.

We find that the district court's jury instructions accurately stated for the jury why the Kuzmas were seeking damages. The jury instructions specifically stated that a prior proceeding had determined that the City had unreasonably closed the Motel. In addition, the jury instruction on causation accurately reflects the law with respect to the element of causation in § 1983 cases, which requires that "[f]or damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000).

We do note, without deciding, that the jury instruction stating that the jury should determine equity "at or near" the time of the Motel's closure, rather than at the time of its demolition, may have been erroneous. We believe that it could have been foreseeable that the value of the Kuzmas's equity could have increased or decreased from the time the Motel was closed to the time the Kuzmas lost their

equity when the Motel was demolished. Nevertheless, we do not need to address this issue further because the jury determined that the closing of the Motel did not cause the mortgage foreclosure, thus making any equity determination moot.

Turning to the evidentiary issues, the district court properly admitted Exhibits 8, the Standard Unsafe Building Code, and 20, the City of Fort Myers Notice of Unsafe Certificate. The Kuzmas never objected to these exhibits on the exhibit list, and the Case Management and Scheduling Order required that all objections to exhibits appear on the exhibit lists or be waived. Therefore, the district court properly determined that the Kuzmas waived any objections to these exhibits. *See Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1419-20 (11th Cir. 1986).

The district court also properly found that the Kuzmas waived their objections to the admission of Exhibits 21 and 22, both of which were correspondence between the Kuzmas' attorney and the Assistant City Attorney regarding the demolition. The Kuzmas withdrew their pretrial objections to these exhibits at trial, and consented to their admission, which waived their right to object on appeal under Fed. R. Evid. 103(a).

The district court also properly admitted Exhibit 18. This exhibit was a letter from Fort Myers Fire Department Chief Randolph Jordan to the Assistant

City Attorney which described a meeting with the Kuzmas at which the Kuzmas indicated their willingness to have the Fire Department burn the motel as a training exercise. Such a letter is probative of the Motel's value, which was directly at issue in this case.

The district court's admission of Exhibits 23-32 and Exhibit 52 was also proper. These exhibits were the tax returns for Kuzma Properties, Inc. and the Kuzmas individually, for the years 1996 through 2000. These exhibits were relevant to the issue of whether or not the closure of the Motel or the Kuzmas independently dire financial situation caused the foreclosure. These exhibits thus had considerable probative value, were not unfairly prejudicial, and were properly admitted.

For similar reasons, the district court properly admitted Exhibit 33, a letter that Mrs. Kuzma wrote to the then-mayor of Fort Myers, Bruce Grady, seeking his assistance in getting a traffic light installed at the intersection where the Motel was located. The letter described the decline of business at the motel, the increase in violent crime in the area surrounding the Motel, the pledge of equity in the Motel property to finance new business in Cape Coral, the Kuzmas's inability to keep up with their bills, and their desire to destroy the Motel and get their equity out. Because this letter was probative as to the value of the Motel and the land, as well

8

as to what might have caused the foreclosure (i.e., the closure of the Motel or the Kuzmas' independent financial problems), the district court properly admitted it, and it did not unfairly prejudice the Kuzmas.

Finally, the Kuzmas object to the admission of Exhibit 14, the Notice of Unsafe Building, but the district court did not in fact admit this exhibit. Therefore, we do not need to rule on this issue.

Therefore, we AFFIRM.

**AFFIRMED**.